†THE CITY OF ALLIANCE v. GERTRUDE F. CAMPBELL.

**1. WHEN NOTICE TO MUNICIPALITY IS, OR IS NOT NECESSARY.**

In an action to recover damages from a municipality for personal injuries caused by a defective sidewalk, if the evidence shows that the defect existed in the original construction of the sidewalk, the municipality is entitled to no notice of such defect before becoming liable for such injuries; but if the defect occurred after the original construction of the sidewalk, the municipality is entitled to such notice before becoming liable for injuries resulting therefrom, unless the defect was of such a character, or had continued for such a length of time, that notice is presumed.

**2. LIABILITY OF MUNICIPALITY WHERE SIDEWALK WAS CONSTRUCTED BY ABUTTING PROPERTY OWNER.**

The fact, that such sidewalk was originally constructed by the abutting property owner, does not shift the responsibility and exempt the municipality from liability for such injuries.

**3. COMPETENCY OF OCCUPATION OF PLAINTIFF AND COMPENSATION RECEIVED BY HIM.**

In such action, it is competent for the plaintiff to testify as to his occupation and the amount of compensation he receives from it, although there is no averment in the petition as to special damages.

**4. COMPETENCY OF OPINION OF PHYSICIAN WHO DETAILS CONVERSATION WITH THE PLAINTIFF.**

The fact, that the testimony of a physician, who examined the plaintiff in such case, shows that the physician talked with the plaintiff about his injuries at the time of such examination, will not disqualify such physician from giving to the jury his opinion, based upon such examination, as to the character of such injuries.

**5. EFFECT OF SAME CASE BEING TRIED TWICE WITH SAME VERDICTS.**

The fact that a case has been tried to a jury the second time, and that the last verdict is substantially the same as the first one, should carry more weight to a reviewing court than if tried but once.

JENNER, J. (orally.)

The case of the *City of Alliance* v. *Gertrude F. Campbell*, is an action brought in the court of common pleas by the defendant in error against the city of Alliance to recover for an alleged negligence of the city in the original construction, or in the negligent maintenance of a board walk or pavement on a certain street in that city, called Broadway.

The amended petition avers that this injury occurred on the 26th day of June, 1886, and it is charged that the defective sidewalk is upon the south side of this street, called Broadway, and in front of what is known as the Broadway street school-house, near the corner of said Broadway and Park streets.

It is further averred that the defendant carelessly and negligently and improperly constructed said sidewalk, in this that the boards thereon were too short to reach onto the stringers to be properly nailed and securely fastened on said stringers; and by reason of said sidewalk being so carelessly, negligently and improperly constructed, the boards thereon had become loose, and were not resting upon or fastened to said stringers, and said sidewalk had become or was at said time, unsafe and dangerous. Said defendant had knowingly and carelessly and negligently allowed said sidewalk so to remain for a long time prior to June 26, 1886.

I read this for the reason that at a former term we reviewed this case on substantially the same facts; but the original petition omitted this averment that I have read. The negligence charged merely was in permitting this board walk to be out of repair and in .. dangerous condition, and with the knowledge of the city,

†Judgment affirmed by Supreme Court, no opinion, 53 O. S., 650. -

and the plaintiff while exercising ordinary care in passing along that walk, received this injury.

As I have suggested, we had the case at a former term for review, and we find here now an answer to the original petition, but we don't find the answer to the amended petition, but will assume from looking into the record, that the answer was substantially the same as the one to the original petition, putting in issue all of the averments of this amended petition, all of the substantial averments.

The facts, very briefly stated, were, that this woman of middle age, or past, living in the city of Alliance, and in the evening of the day while passing along this sidewalk in company with her two daughters and others, at this point she stepped upon one of the plank, and it went down, as she avers, four or five inches, by reason of which she was thrown upon her back, and received the injuries complained of.

It further is shown by her testimony, and the testimony of her two daughters, that they went back, noticed the plank, pushed it down to see the cause of the fall, and they say it was too short; they vary somewhat as to their statement—some of them say two or three inches—didn't reach the other plank within two or three inches; but they all say they stepped upon it, it would pass the stringer and go down four or five inches, and that it was nailed, but the nails were not able to be fastened by driving them straight down, but were driven obliquely, some of the witnesses say they were "toed in," so as to catch the stringer. And it is claimed that that was a defect in the original construction of this walk, by reason of which this injury resulted. It is further claimed that this condition was allowed to remain for so long a time from the original construction of the walk, extending over a period of perhaps nine years, that whether the defect was one of original construction or not, having continued so long, and with the knowledge of certain people (and one woman having said that she was injured stepping into this, her heel was turned, and her ankle sprained, probably), that at all events the character of the defect, and its long continuance brought home knowledge on the part of the municipality. That is the claim.

Now, the testimony on behalf of the city is quite uniform, that they had passed over this walk; I ought to say first that it is claimed, and not denied, not seriously denied, might be accepted as a fact, that this board walk was put down by the board of education in front of their property, school property, and that is urged here in argument, and an authority cited bearing upon the question that this construction, this laying of this plank walk at that place by the board of education, that a defect in the original construction could not be held to apply to the city of Alliance, and therefore that they were entitled to notice. And it is just as well settled now in the authorities, and I might say, that even if I don't refer to all these that I have piled up here, it is just as well settled, at least in our state, and many states, while there is some conflict in others, it is just as well settled that a defect in the original construction of a roadway or a pavement or a board walk, if constructed by a municipality, such substantial defect as to cause an injury to any person who has the right to use it, that they cannot insist upon notice. They are presumed to know what they do themselves. That is the reason for it. It would be absurd to say that if a man builds a thing, constructs a walk himself, to say to him "well, I notify you now that that is built so and so." He is supposed to know, and supposed also, where it is to be used by the public, to build it so it can be used with reasonable safety; a walk that is suitable for the purpose for which it was to be used, for passengers, persons passing over it using ordinary care, that they would not receive any injury by reason of its condition. That is the law, as we understand it. While counsel have been very industrious, in citing numerous authorities, it is a subject upon which the books can be piled up, in which the text books cite authorities by the page, and in which some states hold one way as to what constitutes liability, and some

another. So if a case is to be understood to be authority in Ohio, it is very important to know just what their statute is in the state where the supreme court has announced an opinion, and what rule they hold to with reference to the duty of a municipality. It is not for this court to do more than ascertain what the decisions of our own supreme court are, if they have passed upon these questions.

Now, to come back to the facts—the facts shown here by Mr. Johnson, and a number of other parties it is not necessary to name, that this walk had been used right along; they had gone over it, and gone over it with reference to making an examination, and they testify pretty uniformly, and perhaps all of them, that the walk was in good condition. And I suppose, looking to this record, I might say it was, except the defect in the question, and there is no doubt of that defect. We must come back to that and admit that proposition. And if they passed over it a hundred times, that defect was there at the time of the accident, and prior to that; and it was a defect of a character that by passing over it, it would not be apparent to a passer-by unless they happened to step on it. That is true, as a fact.

Now, that being so, the mere fact of it being in that condition, if it wasn't a defect in the original construction, unless an accident of a character to bring knowledge home to the municipality, occurred before this alleged accident, or so many accidents of some character had occurred there as to bring home notice to the municipality, they would not be bound to take notice of it.

That is, in other words, the municipality is bound to know (whether they did or not) they are bound to know what the citizens generally knew about the walk; they are not bound to know what one or two or three may have known.

There is a good deal of testimony on the question, a good deal as to the character of the injury, and we may say we can see how sensitive counsel naturally got; it is a class of cases that if there is an attempt to deceive it can be pretty easily done; and yet it does not do to assume that; it does not do for a trial court nor for the reviewing court to assume that anybody is attempting to deceive a court and jury. The presumption is, and ought to be, that every witness under oath is honest. They most all are—it is the exception where a witness is not. Therefore, the presumption as to the honesty of all these witnesses ought to obtain.

I want briefly to refer to a few of the authorities; as I have said, there have been a great many cited by counsel—we have looked into a number of them, not all. "Each case depends upon the particular facts of that case, and if it is a proper case to go to a jury, then the jury must determine the question."

Take this Illinois case, among those cited by counsel, 84th Illinois, the case of the *City of Chicago* v. *Margaret Murphy*; the syllabus is brief, I will read it: "Liability for injury from defects in a sidewalk, where the evidence fails to show the city authorities had notice that a plank in the sidewalk was loose, which caused a personal injury, or such circumstances as that they in the exercise of reasonable diligence should have known it was loose, the city will not be liable to the person injured." That is the rule. It is the rule stated in a dozen cases, and more. If it is loose, if it becomes broken on a given day and remains so for a length of time, then the authorities must have either actual notice, or it must be of a character or continued for a length of time that the law will presume that they did have notice.

Now this case of *Blapsberg* v. *The City of Des Moines*, 63d Iowa, page 523: "Where the evidence showed that persons passing along the street failed to observe that the street was in bad condition, it cannot be assumed that the city officials, by the exercise of ordinary diligence, would have noticed what no other person did." That particularly applies to this case; here hundreds of people pass along this street, and as the record would seem to show, it was a public thoroughfare, and while two or three, or four or five observed this defect, observed it by reason of stepping upon it, or being with the parties who did step

upon it; others, hundreds passed along it and did not see it. Now, if it was a defect simply that occurred after this was constructed, or if the city council could not be charged with notice as to the original construction, that case is applicaable; and the case of 2d Denio, page 433.

This is the case of *The City of New York* v. *Bailey et al.*: "A municipal corporation is responsible for the negligence and unskillfulness of its agents and servants when employed in the construction of a work for the benefit of the city or town, subject to the government of such corporation. The owner of real estate is responsible for the negligent acts of persons employed in making erections upon it for his benefit, though the relation of master and servant does not exist between such owner and the person so employed."

The case in 4th Grey, this touches upon another feature of tne case that is urged by counsel; that is this—and while I am upon this subject, as I can do it quicker, and do not want to take up too much time—it is claimed here that evidence was offered in the record of this character—the woman was inquired of as to her occupation ; she said she had been a school teacher, and then further as to what compensation she received, she said thirty-five dollars a month, and it is said that that was erroneous, for the reason that there was no averment in the petition as to special damages, and this was evidence tending to show special damages. That is the ground upon which this is urged, and this case sustains that view, this 4th Grey, 333, case of *Baldwin* v. *The Railroad Company*. "In an action brought by a traveler on a highway against a railroad corporation to recover damages for a personal injury occasioned by their locomotive engine, the plaintiff's occupation and means of earning support are not admissible in evidence to increase the damages, if not especially averred in the declaration."

If that is the law in Ohio, then there never is a case brought when the rule is not violated. If you cannot inquire of a man, when you put him on the stand, "what is your business?"—if you cannot do that, and he cannot say "I am a merchant" or "I am a lawyer" or "I am a farmer," in a damage suit, then I say, every time a case is tried, it is violated. And it is very important for a court and jury to know who a man is; and a statement of a proposition would show that this cannot be the law in the broad terms in which it is put here ; no doubt whatever that a man laboring on the street and earning a dollar a day, who receives a permanent injury, he is not entitled to the same compensation that a man who is engaged in some large business, or a farmer owning a large farm, or a lawyer engaged in a large practice, who receives a permanent injury. The statement of the proposition, and the fact shows that cannot be so, and we do not think this authority means that. "The plaintiff's occupation was not stated in the writ, the only averment in the declaration was that the defendants owned the railroad between Worcester and Springfield; the plaintiff was traveling on the highway, which crosses said railroad, and was using due care; the defendants ran their engine against his wagon," etc. Now, they hold and assume that under their statute, and the fact that it was not stated in the writ—the occupation was not stated in the writ; they seem to be required to do that under the statute there;—then they say the rule is as stated here. But Sedgewick, also cited by counsel, does not mean that. The first volume of Sedgewick on Damages, page 763: "Under a general allegation of damages, the plaintiff may prove and recover those damages which naturally and necessarily result from the act complained of, or those damages the law implies will proceed from it." But how can you tell what damages the man suffers, without knowing who the man is? What is his business? Is he totally disabled from carrying on his business?—if he is, then the damages may be large. The injury may be just as great to a man engaged in a certain occupation or a certain kind of business, he may be still able to carry that on, and the damages would not be so great.

Now, there is one other authority I will read a line or two from it; it is the *Atlantic Reporter*, October 4, 1893, page 193, case of *Lohr*

*and Wife* v. *The Burrough of Phillipsburgh;* it is a Pennsylvania case, and a late case: "Notice of the defect cannot be brought home to the defendant by evidence that the person who was a Burgess at the time of the accident, had, before he was elected Burgess, called the attention of the chief of police to the defect.' A sidewalk such as that in question here, would last only a few years, and it was the duty of the burrough officers to exercise proper supervision and make proper examination of this pavement by going upon it and testing it, to discover by the eye.

I will also refer to the case reported in the advance sheets of the *New York Supplement* for '89, on page 484, *Stebbins* v. *The Village of Oneida :* "The fact that a sidewalk was inspected by a village official a few weeks before plaintiff received an injury thereon is no defense to an action for such injury, and it is proper to submit to the jury the question whether the trustee was reasonably diligent in discovering whether the walk was out of repair or not. The evidence of the condition of the sidewalk where plaintiff was injured, and of similar accidents occurring there, is admissible to show notice on the part of the defendant." Judge Dillon lays down the rule as we have stated it; that is this— that if it is a defect in the original construction, they are entitled to no notice; if it is a defect that occurred after it was constructed they are entitled to notice, or it must be of a character or continued for such length of time that notice is presumed.

Is the city in this instance chargeable with the original construction of this walk? That is a matter involved in some doubt. It is involved in some doubt for this reason—that the walk wasput down by the board of education. But suppose it was a property owner who put down this walk. Can the property owner put down any kind of a walk he chooses? Must not the city be responsible that walk is constructed there properly, safely? Can a city throw off the responsibility by saying "we didn't put it down. John Doe put it down—the board of education put it down." Must not they superintend it? Must not the civil engineer, or some proper person, have the supervision?' If that is conceded, isn't the construction, although the actual work is performed by the property owner—isn't the construction the work of the city?      .

We think it must be so held. It seems so to us. It does not seem to us that the responsibility is shifted, because the city supervised this work, or should have supervised it, and should therefore be responsible for its character.

Now, on the former hearing, this case was reversed for the reason, substantially, that the court charged that if they found this was a defect in the original construction that the city were entitled to no notice. That is a correct rule of law if the issue had authorized it. The issue did not; there was no averment in the petition charging that it was a defect in the original construction. Under that issue we held that the charge was erroneous, and we held further that the evidence under that issue (and of course we did not mean to make it broader than the issue), that the evidence under that issue did not sustain that verdict, under the charge of the court. That was as far as the court could fairly have gone; they cannot go outside of the issue.

We think the only criticism this charge is subject to, is that it is too favorable to the city.

Counsel did not call our attention to any part of it; but the court fails to charge and refused to charge although counsel suggested to the court, "We want you to charge if this injury resulted to this plaintiff by reason of the defect in the original construction that the city was not entitled to notice," and the court says no, he had charged all he wished to charge on that subject; and he charged that they are still entitled to notice, under the facts as shown in the case.

We think it was only fair to have put that question to the jury; it was for the jury to say "how they found the facts?" Was this defect, or was it not, in the original construction? If it was a defect in the original construc-

The City of Alliance v. Gertrude F. Campbell.

tion, and you so find, then no notice was required. But if you find that it was not a defect in the original construction, then they are entitled to actual notice, unless by reason of the publicity and the long continuance of this defect in the walk. That is what he should have done. He does not do that. He says "they are entitled to notice."

Under the issue and under the charge to the jury, if the jury found from the facts that this was a defect in the original construction they could still fairly say they were not entitled to notice. It is a question for the jury. So we do not find any error in that charge; and we find that the evidence here furnished, under this issue, does sustain the verdict.

Was there error in admitting the testimony of Dr. Phillips? That was one of the grounds upon which we reversed the case before. We held it was clearly wrong. We would have reversed that case on the testimony of Dr. Phillips alone, if there had been no error in the charge; because Dr. Phillips was permitted on the former trial to detail to the jury his conversation with the woman, and it went in corroborating the testimony of the woman. That was prejudicial. We thought so then. We think so now.

We have read that testimony carefully, and we do not think there is anything prejudicial in it; indeed we think it was properly admitted, except one doubtful question there—but I will not refer to that further.

We are cited here to Rogers on Expert Testimony, to show that the testimony of Dr. Phillips again is incompetent and prejudicial; he is called again—he examined the woman, and testifies as to how he found her—testifies among other things that he knows of no reason why it should be understood to be a permanent injury, but he details that he talked with her, necessarily talked with her, he wouldn't go there and not talk to the woman; he talked to her, he ascertained what her claim was about it—that he had a right to do.

Now, he testifies and gives his opinion from the examination that he made; does this authority exclude it and hold it to be incompetent? Let us see: "The rule is that an expert cannot be allowed to give his opinion based upon statements made to him by parties out of court, and not under oath. His opinion, to be admissible, must be founded either on his own personal knowledge of the facts, or else upon a hypothetical question; hence the opinion of a physician called in consultation with the attending physician cannot be received, if based upon declarations made to him by such physician, or by the wife or nurse of the patient, as to his symptoms," etc.

But cannot he talk to the party he is examining? The wife cannot state it; the nurse cannot state it; another physician cannot state it—about the symptoms —but cannot he talk to the party, and then making his examination and judging from the examination as to how he finds it, cannot he detail that to the jury? If not, then the testimony of almost every physician would be incompetent, except you put a hypothetical question to him. The hypothetical questions are put generally when the witness has not seen the patient at all, has not made any examination as a physician. Assuming the facts to be so and so, what do you say? But if a surgeon has examined, then a different rule obtains. Of course you must carefully exclude all declarations from the jury.

Now, this is a large verdict, and it seems to be a hardship on the city; and counsel state well what the rule is in a second trial. When a case has been tried a second time, to a jury, a fair jury, and the verdict is returned substantially the same as on the first trial, it ought to carry more weight to a reviewing court than if it was tried but once. That ought to be the rule; that is the rule, as we understand it, with all courts.

Looking at this whole record we don't find any error that would justify us in again reversing this case. So we affirm it, without penalty.

*Fording & Harris*, for Plaintiff in Error.

*Baldwin & Shields*, for Defendant in Error.